George J. Franken v. Commissioner.
Franken v. Commissioner
Docket No. 18605.
United States Tax Court
1950 Tax Ct. Memo LEXIS 236; 9 T.C.M. (CCH) 272; T.C.M. (RIA) 50080; March 29, 1950
*236 The petitioner during the taxable year operated a cafe-bar and was also employed full time in another position. Respondent determined that the records of the cafe-bar did not correctly reflect income and, after an examination by an internal revenue agent, added the amount of $3,477.89 to petitioner's income as additional income from the cafe-bar. Upon the evidence, held, that the respondent did not err in adding this amount to petitioner's income for the taxable year. George J. Franken, pro se. William R. Bagby, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion Respondent determined a deficiency of $1,130.80 in petitioner's income tax for the taxable year ended December 31, 1944. The deficiency results from the addition of $3,477.89 to the net income reported by petitioner *237 in his return for the taxable year 1944. This $3,477.89 which respondent has added to the net income reported by petitioner on his return represents additional income which the Commissioner has determined petitioner received in 1944 from a business which he owned in that year and which was operated by his brother, Fred. Petitioner contests this action of the Commissioner by an appropriate assignment of error. Findings of Fact Petitioner is an individual who, during the taxable year 1944, was a resident of Youngstown, Ohio. His income tax return for the year 1944 was filed with the Collector of Internal Revenue for the 18th District of Ohio at Cleveland. During the year 1944, the petitioner was employed by the Truscon Steel Company of Youngstown, Ohio and was paid a salary of $4,271.24. This latter amount is not involved here. He also owned and operated a cafe-bar known as the Shamrock Grill (hereinafter sometimes referred to as the Grill) located at 1764 Market Street, Youngstown, Ohio, whose sales consisted mainly of whiskey, beer, wine and food. Petitioner's brother, Fred J. Franken, was manager in complete charge of all operations of the Grill during the taxable year but *238 devoted only part of his time to the Grill as he was employed in another position. He received $1,200 during 1944 for his services at the Grill. Among the other employees of the Grill during 1944 were four bartenders, Rudolph Franken, another brother of petitioner, and Julius E. Franken, who was petitioner's father. Petitioner purchased the Grill in 1938 for about $20,000, having borrowed from a bank in order to make the purchase. Throughout 1944, petitioner held title to all the assets connected with the business, including land, buildings, furniture and fixtures. On January 1, 1944, there was a mortgage outstanding on the property of the Grill in the amount of $15,638.96 and on December 31, 1944, there was due and outstanding on said mortgage the amount of $13,369.44. The makers of the mortgage note were petitioner, his wife Hazel Franken, and Fred J. Franken. The Grill's records consisted of daily tally sheets with a breakdown of sales into liquor, beer, wine, food and miscellaneous items. After the close of business each day, Fred Franken entered the daily receipts and disbursements on a daily tally sheet. The balance of the receipts, less disbursements, was deposited the next *239 day in the bank account maintained for the Grill at the Dollar Savings and Trust Company, Youngstown, Ohio. At the end of each month, petitioner would take the daily tally sheets and enter them in his cash receipts journal. At the end of each month an accountant, who was employed for that purpose, received the journal and totaled the various columns and posted the total to the general ledger. Once a week Fred J. Franken filled in the check stubs for payment of all bills and for salaries for the employees, and the accountant went to the Grill and filled out the checks in accordance with the stubs, for signature. The total deposits made to the account of the Grill during 1944 in the Dollar Savings and Trust Company was $67,529.72. Petitioner's 1944 income tax return was prepared by the accountant from the data which was supplied by the petitioner. The return disclosed receipts from the Grill in the total amount of $63,311.91 and a net profit from the operation of the Grill in the amount of $421.81. In addition the return listed rent received in the amount of $870 for an apartment on the premises. There was deducted depreciation in the amount of $374.21, leaving net income from rents *240 in the amount of $495.79. The total net income thus reported from the operation of the Grill and the Grill property was $917.60. During the taxable year the amount of $6,913.18 was expended for a building addition to the Grill. Due to the building addition, increase in the current assets and the reduction of liabilities, the net worth of the Grill as shown by the balance sheet, increased in the amount of $5,117.23, as follows: December
December
31, 1943
31, 1944
Assets
$40,916.33
$42,884.61
Liabilities
18,929.12
15,780.17
Net worth
$21,987.21
$27,104.44
21,987.21
Net worth increase during
1944
$ 5,117.23
On May 17, 1942, petitioner and his wife borrowed the amount of $6,000 on a note from the Home Savings and Loan Company and executed a mortgage on their residence. On December 31, 1943, there was due on this note the amount of $5,413.40. Various payments were made by petitioner on account of said mortgage during 1944 and the mortgage was fully paid off on June 30, 1944. Petitioner also paid on account of this mortgage the amount of $68.92 in interest and $63.54 in taxes. The above amounts totaling $5,550.86 was paid in cash. During *241 the year 1944, petitioner purchased United States Savings Bonds in the denomination of $881.25. During 1944 two savings accounts were opened in the Peoples Bank of Youngstown, Ohio - one in the name of Hazel R. and George Franken in which there was deposited $300 on November 4, 1944, and the other in the name of Hazel R. and George Franken, Jr. in which there was deposited $30 on December 30, 1944. Petitioner borrowed no money during 1944, and neither he nor his wife received any gifts or inheritances. Petitioner did not sell any of the fixed assets of the Grill in 1944. Petitioner's family consisted of his wife and three children. During 1944, two of his sons were in the military service. Petitioner in 1944 spent approximately $2,000 in cash for personal living expenses. The profit and loss statement of the Grill for the year ended December 31, 1944, as complied by its accountant, L. W. Huffman, was as follows: Sales: Liquor
$14,811.22
Beer and wine
42,691.40
Food
3,349.98
Miscellaneous
907.41
Total sales
$61,760.01
Cost of sales: Inventory
1/1
$ 4,300.00
Purchases: Liquor
7,784.53
Beer and
wine
13,432.83
Food
6,079.74
Soft drinks
732.72
Miscellane-
ous
1,655.54
$33,985.36
Less: Inventory 12/31
4,195.50
Cost of sales
29,789.86
Gross profit
$31,970.15
Expenses: Accounting
$ 385.00
Advertising
513.83
Bar expenses
524.32
Gas and electric
1,980.20
Laundry
318.41
Miscellaneous
320.76
Supplies
1,237.00
Wages
18,494.68
Taxes
1,808.34
Repairs
1,374.97
Interest paid
947.39
Insurance
732.85
Detective service
240.00
License
1,156.00
Telephone
287.20
Bank charge
128.70
Sales tax purchases
475.00
Depreciation
2,549.80
33,475.45 *
Net loss
$ 1,505.30
Add: Other income
2,421.90
Net operating profit
$ 916.60
*242 An investigation of petitioner's return for the year 1944 was made by a revenue agent and an examination of the records of the Grill revealed that the receipts from the sales of food were less than the cost of the food purchased, that the receipts from miscellaneous articles sold were less than the cost of the goods purchased and that the receipts from beer and wine seemed somewhat high as compared with cost. The agent concluded that the records as maintained could not be accepted as clearly reflecting income and from a computation of the increase in net worth of the Grill during 1944, he concluded that the indicated loss on food in the amount of $2,729.76 ($6,079.74 minus $3,349.98) and the indicated loss on miscellaneous items of $748.13 ($1,655.54 minus $907.41) or a total of $3,477.89 should be restored to income. He thereupon recommended that the amount of $3,477.89 be added to petitioner's income. This recommendation of the revenue agent was accepted by the Commissioner and this addition resulted in the deficiency here in controversy. Subsequently, after protest, the agent made a more thorough investigation of petitioner's *243 assets and liabilities seeking evidence of his assets from bank records and United States Savings Bonds registered with the Bureau of Public Debt. With data so procured in this investigation he computed the increase in petitioner's net worth and added the amount of $3,000 as the estimated amount for petitioner's personal living expenses during 1944. Based upon the increase in petitioner's net worth which the agent alleged took place in 1944, he computed petitioner's net income for 1944 to be $13,155.54, as set forth in the following table which was introduced in evidence at the hearing by respondent: December
December
31, 1943
31, 1944
Cash on hand
$ 200.00
$ 343.66
Checking acct. Dollar Sav. & Tr. Co.
510.72
2,517.52
Checking acct. Peoples Bank 23856
0
300.00
Savings acct. Peoples Bank 24063
0
30.00
Savings acct. Home Sav. & Loan
1.01
1.03
Inventories
4,300.00
4,195.50
Land
9,346.90
9,346.90
Building Business
3,040.00
3,040.00
Building Improvements
6,245.40
6,245.40
Building Frame
3,742.14
3,742.14
Building Additions
4,894.63
6,913.18
Equipment
9,564.26
9,616.92
Furniture and Fixtures
4,092.29
4,092.29
Prepaid Insurance
762.72
Prepaid License
833.34
793.34
Residence
7,500.00
7,500.00
Bonds
375.00
881.25
Total Assets
$54,645.69
$60,321.25
Liabilities
Mortgage - Dollar Sav. & Tr. Co.
$15,638.96
$13,369.44
Mortgage - Residence - Home S. & L.
5,448.43
0
Accounts Payable
864.93
1,665.72
Accrued Taxes
85.64
745.01
$22,037.96
$15,780.17
Net Assets
$32,607.73
$44,541.08
32,607.73
Increase During 1944
$11,933.35
Deduct - Allowable Depreciation
2,549.80
$ 9,383.55
Add: Income Taxes Paid
771.99
Indicated Income Without Considering Living Expenses
$10,155.54
Estimated Personal Living Expenses
3,000.00
Indicated Income
$13,155.54
*244 Petitioner has not proved that the Commissioner erred in adding to the net income reported on his return for 1944 the amount of $3,477.89. Opinion BLACK, Judge: The sole issue in this proceeding is whether the respondent erred in determining that $3,477.89 should be added to the income reported by petitioner in his return for the taxable year 1944. The respondent's determination is based upon an examination of the records of the Shamrock Grill by a revenue agent who concluded that the records as maintained could not be accepted as clearly reflecting income. This revenue agent concluded, as has been explained in our findings of fact, that $3,477.89 from the Grill should be added to the income reported on petitioner's return. The revenue agent arrived at this $3,477.89 in the following manner: The profit and loss statement prepared by the accountant of the Grill for the year ending December 31, 1944, and which was used as a basis for filing petitioner's return showed that food purchased for the Grill that year was $6,079.74 and that receipts from the sale of food for that year were $3,349.98, thus indicating that the Grill lacked $2,729.76 of getting back as much as it paid for *245 the food sold. The same balance sheet showed the purchase of miscellaneous articles sold in the Grill for $1,655.54 and that the sales from these miscellaneous articles amounted to $907.41 in the year 1944, thus lacking $748.13 of getting back as much as it paid for these miscellaneous articles. The agent thereupon assumed that the Grill must have sold its food purchased in 1944 and the miscellaneous articles purchased in 1944 for at least as much as it paid for these articles. So the revenue agent recommended that there be added to the net income reported by petitioner from the operations of the Grill the sum of $3,477.89 which is the sum of $2,729.76 and $748.13, explained above. The Commissioner has approved this revenue agent's report and, as already stated, has added $3,477.89 to the net income reported by petitioner on his return. It seems to us that this is a very unorthodox method of determining a deficiency. It plainly is not by the use of the "increase in net worth" basis. It is true that under section 41 of the Internal Revenue Code, if the Commissioner finds that the method of accounting used by the taxpayer does not clearly reflect income then the *246 "computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income." As we have already stated, the method used by the Commissioner in the instant case was an unorthodox method and it is doubtful if it is entitled to be called a "method" at all. However, the evidence at the hearing convinces us that petitioner's net worth, including increase in net worth of the Grill, increased to such an extent that petitioner had at least $3,477.89 more income from the Grill than he reported on his return. If the Commissioner had really used the "increase in net worth" method in his computation of the deficiency herein, it seems rather plain that he would have determined a larger deficiency than was actually determined. For example, there are balance sheets in evidence prepared by petitioner's own accountant as of December 31, 1943 and December 31, 1944. The investment in Shamrock Grill was $27,104.44 on December 31, 1944, as against $21,987.21 on December 31, 1943. This is an increase in net worth of $5,117.23 of the Grill during the year 1944. Also the profit and loss statement prepared by petitioner's accountant for the year 1944 shows *247 total sales of the Grill for the year 1944 of $61,760.01, and petitioner's income tax return shows total receipts of the Grill of $63,311.91. Respondent proved at the hearing that during the year 1944 the Grill deposited its daily cash sales with the Dollar Savings and Trust Company of Youngstown, Ohio, and that the total of its deposits in that bank was $67,529.72 in 1944. Thus the amount of cash which the Grill deposited with the bank from receipts was in 1944 considerably in excess of the receipts shown on the profit and loss statement and on petitioner's income tax return. Respondent, in arguing that his determination should be upheld, points out that the agent, after protest was filed by the petitioner, made a thorough investigation of petitioner's assets which indicated that his net worth increased during the taxable year in the amount of $11,933.35 which, after adjusting for allowable depreciation, personal expenditures for living expenses of $3,000 and income taxes paid, revealed an indicated net income of $13,155.54. We have found that the personal living expenses of petitioner and his family were approximately $2,000. This would only make a slight difference in petitioner's *248 favor from the table as computed by the revenue agent. While we have not felt justified in making a finding that respondent's table of petitioner's assets and liabilities showing net increase in petitioner's net worth during 1944 is correct, it does corroborate other uncontradicted evidence in the record which shows that the net worth of the Grill increased in 1944 more than the $3,477.89 which the Commissioner has added to petitioner's net income for that year. The proof submitted by petitioner with the view of overcoming the correctness of the respondent's determination of the deficiency is rather meager and unconvincing. He urges that the entire amount of the sales made by the Grill was reported as gross sales in his return for the taxable year and attempts to explain the disparity between the Grill receipts of $63,311.90 reported on the return and the total bank deposits of $67,529.72 of the Grill by stating that deposits totaling $4,100 in this account were made from his personal funds. No satisfactory proof of this was made at the hearing. He also urges that he used personal funds earned in 1944 or accumulated earnings to pay off the mortgage on his residence of $5,413.40. *249 But the evidence does not convince us that he had enough personal earnings in 1944, or accumulated funds in prior years, to make these payments. According to his return his salary for the taxable year was $4,721.24 and there is no evidence of any other substantial source of income, except the Grill. There is nothing in the record to indicate that he borrowed any money or that he or his wife received any gifts or inheritance. It, therefore, seems to be reasonable to assume that funds which were used during the taxable year to increase the value of the net worth of the Grill by $5,117.23 and decrease his liabilities by the payment of $5,413.40 due on the mortgage on his residence were derived in substantial part, at least, from the operation of the Grill. Giving due allowance for depreciation and finding as petitioner urges that the respondent's estimate of his living expenses was excessive because his two sons were in the military service, we still have a substantial discrepancy between the uncontradicted increase in petitioner's net worth during the taxable year and the income of $5,188.84 (salary of $4,271.24 and net profit from the Grill of $917.60) reported by petitioner. In view *250 of the petitioner's failure to give a satisfactory explanation of this discrepancy, we think that the respondent's determination that $3,477.89 should be added to the income reported by petitioner should be sustained. Decision will be entered for the respondent. Footnotes
*. The correct total should be $33,474.45.↩